IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AKOUVI ADJESSOM, individually and as Administratrix of the Estate of Randall Adjessom, | * * * * | |
| Plaintiff, | * | 1:24-cv-472-TFM-B |
| v. | * * * | |
| CITY OF MOBILE, et al. | * * | |
| Defendants. | * | |

**DEFENDANT VIGOA-MARTINEZ'S MOTION TO KEEP BWC VIDEO UNDER SEAL**

---

Counsel for Officer Vigoa-Martinez understands and agrees with the proposition that the law favors public access to Courts, especially as it relates to Court decisions, that there is a common-law right of access to judicial proceedings and records, and that there is a presumption that judicial records should be available to the public. Counsel does not quarrel with those broadly stated, and broadly applied, principles.

But those principles are not absolute. *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021) ("But even when the right of public access attaches, it is 'not absolute.'").

In this case, the body-worn camera ("BWC") video submitted by the moving defendants[1] in support of their motion to dismiss, and the BWC video submitted by plaintiff in opposition to the motion, were filed under seal and "provisionally sealed" pending the Court's review and determination of the motion to dismiss. Doc. 75 at 4, PageID.1226; Doc. 89, PageID. 1545. The Court, in both Orders, expressed an intention that "once the motion to dismiss has been ruled upon, if the video evidence is relied upon in resolving any dispositive motions, it is the Court's intention to unseal the videos (regardless of whether the motions are granted or denied)." Doc. 75 at 4, PageID.1226; Doc. 89 at 2, PageID. 1546.

In the recent Memorandum Opinion and Order issued July 28, 2026, the Court ordered that the BWC video will remain provisionally sealed for forty (40) days and will be automatically unsealed and accessible to the public through controlled methods if an appeal is not timely filed within that forty-day period of time. Doc. 118, PageID.1739.

---

[1] Officer Vigoa-Martinez has not filed any BWC video with the Court.

But the release of these videos should not be so automatic. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) ("the fact that sealed material is subsequently submitted in connection with a substantive motion does not mean that the confidentiality imposed by Rule 26 is automatically forgone."); *Commissioner, Alabama Department of Corrections v. Advance Local Media, LLC*, 918 F.3d 1161, 1168-69 (11th Cir. 2019) (same).

Determining that the BWC video is a judicial record "is not the end of the inquiry." *Callahan v. United Network for Organ Sharing*, 17 F.4th at 1361. The Eleventh Circuit has held that courts must also evaluate whether good cause exists to prevent public access, "balancing the asserted right of access against the other party's interest in keeping the information confidential.'" *Id.* (quoting *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d at 1312 (11th Cir. 2001) ("The common-law right of access standard as it applies to particular documents requires the court to balance the competing interests of the parties."). The Eleventh Circuit has described that balancing test as follows:

> Though we have not articulated a set list of factors, a court weighing these competing interests will consider a number of important questions, including "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of an likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents."

*Callahan v. United Network for Organ Sharing*, 17 F.4th at 1363.

**The ability to seat an impartial jury is a compelling reason for keeping the BWC videos sealed.**

**"[**T]he Constitution itself commits the trial of facts in a civil cause to the jury." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 624-25 (1991). "[T]he jury is the principal factfinder, charged with weighing the evidence, judging the credibility of witnesses, and reaching a verdict." *Id.*

Empaneling an impartial jury is the linchpin of our judicial system. Impartial jurors, free from bias, prejudice, or preconceived notions that may influence their judgment and decision-making, are essential for guaranteeing a fair trial for all parties involved. Impartial jurors are more likely to weigh the evidence objectively and render a verdict solely on the facts presented in court and the applicable law.

The requirement that jurors must decide the case on only the evidence presented in the courtroom is a rudimentary principle embodied in the Court's instructions to the jury. Eleventh Circuit Pattern Jury Instruction 1.1 ("You must decide the case on only the evidence presented in the courtroom."); Instruction 2.7 ("It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and your own common sense. You must decide this case exclusively on the evidence you receive here in court.") Instruction 3.3 ("As I said before, you must consider only the evidence that I have admitted in the case."). "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado*, 205 U.S. 454, 462 (1907).[2]

---

[2] Quoted in the *Handbook for Trial Jurors Serving in the United States District Courts* at 12, published by the Administrative Office of the United States Courts. As noted in the Handbook, these words "apply with equal force to jurors serving in this advanced technological age." *Id.*

The pattern jury instructions include the admonishment to jurors that:

> You shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. . . . It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It's not fair to the parties if you base your decision in any way on information you acquire outside the courtroom.

Pattern Jury Instruction 1.1.

These judicial admonitions however do not address the concern about the impartiality of potential jurors when they walk into the courtroom bringing with them the baggage of biases and preconceptions garnered through pretrial influences. Research suggests that jurors are likely to discuss pretrial publicity (PTP) during jury deliberations, even when admonished not to.[3] The results of one academic study conducted

---

[3] Ruva, *From the Shadows Into the Light: Pretrial Publicity and Deliberation Affect Mock Jurors' Decisions, Impressions, and Memory*, 39 Law and Human Behavior 294, 302, 306-07 (2015) (a peer reviewed academic journal for psychology and law research published by the American Psychological Association)

in 2002 "support[ed] previous research indicating that judicial admonitions do not reduce the biasing effect of PTP; that is, the main effect of PTP was not qualified by an interaction with judicial instructions."[4] The author commented that "[t]hese results do not bode well for the American justice system, which bears the constitutional responsibility for a fair and impartial trial, as they suggest that judicial admonitions do not have their intended effect."[5] "One possible reason for the persistence of PTP's influence on jurors' decisions is that jurors mistake PTP for trial information and discuss PTP during deliberations as if it came from the trial."[6]

The Court's instructions to the jury are premised on an expectation that jurors can and will set aside their biases and preconceptions and decide the case solely on the evidence presented at trial. Research however suggests otherwise: "Unfortunately, this expectation is problematic because such biases are formed through an individual's

---

[4] Bornstein, *Pretrial Publicity and Civil Cases: A Two-Way Street?*, 26 Law and Human Behavior 3, 13-14 (2002).

[5] Id. at 13.

[6] Ruva, *From the Shadows Into the Light*, 39 Law and Human Behavior at 306-07.

experiences and often are unconscious. Although these individual biases exist, the courts often assume that the deliberation process will mitigate bias through juries correcting individual jurors' biased positions and memory errors. Contrary to these assumptions, research suggests that bias correction is unlikely."[7] The *Handbook for Trial Jurors Serving in the United States District Courts* acknowledges as much: "Human experience shows that once persons come to a preliminary conclusion as to a set of facts, they hesitate to change their views." *Handbook for Trial Jurors Serving in the United States District Courts* at 10.

There may be very few tools available to address these concerns. *See, e.g., Pettaway v. Barber*, 645 F.Supp.3d 1269, 1283-84 (M.D. Ala. 2022) (finding that the public's viewing and discussion of the BWC video is likely to bias a potential jury in a manner "that will be difficult, if not impossible, to remedy through voir dire and/or special instructions to the jury.").

---

[7] Ruva, *What Drives a Jury's Deliberation? The Influence of Pretrial Publicity and Jury Composition on Deliberation Slant and Content,* 28 Psychology, Public Policy, and Law 32, 33, 45-46 (2022) (a peer reviewed academic journal published quarterly by the American Psychological Association).

But keeping the BWC video under seal through the conclusion of this case is an effective tool for accomplishing the goal of empaneling impartial jurors unencumbered by biases and preconceptions garnered through pretrial influences.

When information regarding a case makes its way onto social media prior to trial, it has the capacity to bias the potential jury pool. Viral posts, videos, and comments about a case can create preconceived notions untethered to the evidence presented in the courtroom. Jurors receiving such extra-judicial information may struggle to remain impartial despite what the jury instructions say, which obviously negates the sought-after impartiality that our jury system intends and demands. "Prejudicing a jury pool, even with relevant and/or reliable material, is not how our system of justice is designed to function." *Pettaway v. Barber*, 645 F.Supp.3d at 1283-84.

BWC video in cases of this kind will become the subject of intense public scrutiny. *See Pettaway v. Barber*, 645 F.Supp.3d at 1283 ("The Court finds that, if released, the footage will likely be viewed and scrutinized pervasively by the public."). Social media assures two things: "overwhelming current exposure, and that this incident will remain

captured on the internet forever."[8] In this age of social media, potential jurors who see the BWC video, or who are exposed to substantial discussions of the video prior to trial, "will be significantly hampered in their ability to set aside any preconceptions and decide the case based solely on the evidence and legal theories submitted to them in court." *Pettaway v. Barber*, 645 F.Supp.3d at 1285. Once viewed, the video "cannot be unseen, ignored, or easily set aside." *Id.*

This motion to keep the BWC video sealed is made because of the probability that the BWC video – if released – will spread through social media and on the internet. *Pettaway v. Barber*, 645 F.3d at 1283 ("the Court is not blind to the fact that, in this age of social media, videos of alleged police misconduct and violence, when released, become instantly and pervasively available to and scrutinized by the public on a nationwide scale."). And when this happens, prospective jurors may not

[8] *Murry v. City of Indianola*, Northern District of Mississippi, Civil Action No. 23-97, *Order Granting Motion to Seal*, Doc. 73, at 5 (December 14, 2023) (Magistrate Judge Order) (concluding that public release of BWC video "would make the seating of an impartial jury difficult in this case."); *Opinion and Order*, Doc. 97, at 9 (July 19, 2024) (District Judge Order overruling objection) ("the ability to seat an impartial jury and the interest in protecting a minor's privacy are compelling reasons capable of outweighing the public's interest in disclosure.").

only have viewed the video before they walk into the courtroom but may also have had considerable time to formulate preconceived opinions.

Positive proof of the impossibility of assuring a fair trial in light of these circumstances may not itself be measurable or quantifiable, because "a forecast of future difficulty is by definition uncertain, but equally uncertain is the rejection of that forecast." *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. August 28, 1981) (affirming denial of media request for access to audiotapes).[9] But this Court is not obliged to balance "fair trial" with "free press" or public access concerns. *Id.* at 432. The choice is "between an undeniably important but nonconstitutional right of physical access to courtroom exhibits and a defendant's due process right to a fair trial, 'the linchpin of our judicial system.'" *Id.* In the words of the Fifth Circuit: "It is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Id.* at 431.

[9] Decisions of the Fifth Circuit prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

Because of the biasing effect of pretrial publicity, the pervasive influence of social media, and the ease with which viral posts, videos, and comments can be shared across multiple social media platforms and reach countless individuals, the issue of whether jurors can render a verdict based solely on the evidence presented during trial is very important to the functioning of our judicial system. Officer Vigoa-Martinez should be afforded protections necessary to ensure that this case will be tried before a jury unbiased and uninfluenced by outside influences. To accomplish what should be the ultimate goal of all jury trials, Officer Vigoa-Martinez moves the Court to keep the BWC video under seal for the duration of this litigation.

**Protecting the identity and privacy of minors is a compelling reason for keeping the BWC videos sealed.**

The BWC video shows minors in various states of dress and undress. These are the same minors who are identified by their initials in the second civil action filed by Akouvi Adjessom, Civil Action No. 2025-455.

According to the Complaint filed in that case, Akouvi Adjessom is the mother of minor children identified as J.Y.A. and J.

S.A. Doc. 1 at 5, ¶ 11, PageID.5. The Complaint alleges that J.Y.A. was 16 years old "at the time of this filing." Id. The Complaint alleges that J.S.A. was "10 years old at the time of this filing." Id. Both J.Y.A. and J.S.A. are presumptively still minors.

Minor children J.Y.A. and J.S.A. have a substantial privacy right as evidenced by the use of initials to identify them, and protecting their privacy is a compelling reason for keeping the BWC video under seal. *Murry v. City of Indianola,* Northern District of Mississippi, Civil Action No. 23-97, *Opinion and Order*, Doc. 97, at 10 (July 19, 2024) ("Because A.M.'s privacy interests and the interest in seating an impartial jury outweigh the public's interest in disclosure, and because the video was sealed to the extent needed to protect A.M.'s privacy, the Seal Order was not clearly erroneous and was not contrary to law. Murry's objection to the Seal Order is overruled.").

Based on the foregoing, defendant Vigoa-Martinez moves the Court to keep the BWC video under seal for the duration of this litigation.

Respectfully submitted,

/s/ JAMES B. ROSSLER
JAMES B. ROSSLER
ROSSLER LAW FIRM LLC
2124 Marchfield Drive W
Mobile, Alabama 36693
Phone: 251-432-2300
Email: jrossler@rosslerlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September 2026 I served the foregoing **Motion to Keep BWC Video Under Seal** on all counsel of record by emailing a copy to:

| | |
|---|---|
| Elizabeth A. Bailey | (ebailey@gelaw.com) |
| Caley DeGroote | (cdegroote@gelaw.com) |
| Grant & Eisenhofer P.A. | |
| 123 Justison Street | |
| Wilmington, DE 19801 | |
| | |
| Daniel Craig | (dcraig@gelaw.com) |
| Grant & Eisenhofer P.A | |
| 123 South Broad Street | |
| Suite 2250 | |
| Philadelphia, PA 19109 | |
| | |
| Ricardo A. Woods | (rwoods@burr.com) |
| Taylor Barr Johnson | (tjohnson@burr.com) |
| Catherine Simon Spann | (cspann@burr.com) |
| Timothy A. Heisterhagen | (theisterhagen@burr.com) |
| Burr & Forman LLP | |
| 11 North Water Street | |
| Suite 22200 | |
| Mobile, Alabama 36602 | |

Mark L. Redditt (mredditt@maynardnexsen.com)
Raymond L. Bell, Jr. (rbell@maynardnexsen.com)
J. Marshall Gardner (mgardner@maynardnexsen.com)
Maynard Nexsen PC
11 North Water Street
Suite 24290
Mobile, Alabama 36602

/s/ James B. Rossler